# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **JENNIFER THOMAS for** <br> **TIFFANY M. THOMAS,** <br><br> **Plaintiff,** <br><br> v. <br><br> **MICHAEL J. ASTRUE,** <br> **Commissioner of Social Security,** <br><br> **Defendant.** | <br><br><br><br><br><br> **CIVIL ACTION NO: 1:08-00300** |

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for children's Supplemental Security Income (CSSI) under Title XVI of the Social Security Act. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 13 and 19.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Jennifer Thomas, on behalf of her daughter, Tiffany M. Thomas (hereinafter referred to as "Claimant"), filed an application for child's SSI benefits on June 6, 2005 (protective filing date), alleging disability as of January 1, 2005, due to MRSA, heart problems, asthma, GERD, behavioral problems, eating problems, stomach problems, and birth defects. (Tr. at 30, 36, 66, 73-76, 93-95.) Claimant's application was denied initially and upon reconsideration. (Tr. at 28-29, 30-33, 36-39.) On June 2, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 40.) The hearing was held on August 24, 2007, before the Honorable Karen B. Peters. (Tr. at 530-69.) By decision dated October 25, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-24.) The ALJ's decision became the final decision of the Commissioner on

March 12, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On May 9, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

The Standard

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Under the Regulations in force during all times relevant to Claimant's claim, a three-step sequential evaluation is undertaken to determine disability for children. 20 C.F.R. § 416.924(a) and (b). First, the ALJ must determine whether the child is engaged in substantial gainful activity. Id. If the child is, he or she is found not disabled. Id. § 416.924(a). If the child is not, the second inquiry is whether the child has a severe impairment. Id. § 416.924(a) and (c). An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.924(d). To meet or medically equal a listing, a child's impairment(s) must equal the severity of a set of criteria for an individual listing impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Id., § 416. 924(d). If the child's impairment meets or medically or functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. 20 C.F.R. § 416.924(d)(1). If it does not, the claimant is found not disabled. Id. § 416.924(d)(2). A mere diagnosis of an impairment, however, does not mean that it meets a listed

impairment. See id. § 925(d). Rather, a child's impairment meets a listed impairment only if it meets all of the requirements of the listed impairment. See Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990).

As pertains to this case, Listing 112.11 states that attention deficit hyperactivity disorder ("ADHD") is

> [m]anifested by developmentally inappropriate degrees of inattention, impulsiveness and hyperactivity.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
> A. Medically documented findings of all three of the following:
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity.
> AND
> B. * * * for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Listing 112.02B.2.a - d provides that the required level of severity is met

> 2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests . . .; or
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests . . .; or
> d. Marked difficulties in maintaining concentration, persistence, or pace.

If a child has a severe impairment or combination of impairments that does not meet or medically

equal any listing, the ALJ must decide in view of six domains of functioning whether the child has limitations which "functionally equal the listings" of disabling conditions. See 20 C.F.R. § 416.926a(a).

The Regulations provide that if a child's severe impairments do not meet or medically equal the listings, the Commissioner will assess all functional limitations caused by the child's impairments. 20 C.F.R. § 416.926a(a). Functional equivalence can be shown when a child has two "marked" limitations or one "extreme" limitation in six domains of functioning. 20 C.F.R. § 416.926a(a), (b)(1). The six areas of functioning include: (I) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. See 20 C.F.R. 416.926a(b)(1)(I) - (vi); 65 Fed. Reg. 54,747 (2000).[1] These domains are "broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). The Regulations state as follows respecting how the Social Security Administration considers a child's functioning:

We will look at the information we have in your case record about how your functioning is affected during all of your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community. We will look at how appropriately, effectively, and independently you perform your activities compared to the performance of other children your age who do not have impairments.

See 20 C.F.R. § 416.926a(b). When evaluating a child's ability to function in each domain, several factors are taken into consideration to help determine whether the child's impairments affect his or

---

[1] Prior to the 2001 changes, the broad areas of development or functioning in which a claimant's limitations were assessed included: (1) cognition/communication; (2) motor; (3) social; (4) personal; and (5) concentration, persistence or pace. 20 C.F.R. § 416.926a(c)(4)(i)-(iii) and (v)-(vi) (2000).

her functioning and whether his or her activities are typical of other children his or her age who do not have impairments. Id. § 416.926a(g) - (l).

If a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain, the Commissioner will find that the impairment functionally equals the listings, and the child will be found disabled. Id. § 416.926a(a). The Regulations define a "marked" limitation as when an impairment interferes seriously with the child's functioning, and is more than moderate, but less than extreme. 20 C.F.R. § 416.926a(e)(2)(I) (2007). A "marked" limitation also means when standardized tests are used as the measure of functional abilities, a valid score that is at least two, but less than three, standard deviations below the norm for the test. Id. The Regulations define an "extreme" limitation in a domain as when an impairment "very seriously" limits day-to-day functioning, or interferes "very seriously" with one's ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3)(I). "Extreme" limitation also means "a limitation that is 'more than marked.'" Id. This rating is given to the worst limitations. See id.

20 C.F.R. § 416.924a provides that in determining disability for children, all relevant information in the case record will be considered, including medical evidence, such as testing and opinions from medical sources "about the nature and severity of your impairment," and information from other people, including parents, other caregivers, and teachers. 20 C.F.R. § 416.924a. The Regulations further specifically provide that ALJs may ask for and consider opinions from medical experts regarding the nature and severity of a child's impairment and on whether the impairment(s). equals the requirements of any impairment listed in Appendix 1. See 20 C.F.R. § 416.927(f)(2)(iii). In considering these opinions, ALJs evaluate them using the factors as used for evaluating all opinion evidence, including the supportability and consistency of the evidence, and specialization

of the source. Id.

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity at any time relevant to the decision. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from cardiac disorders, a pulmonary aneurysm by history, a sleep disorder, behavioral problems, ADHD, asthma, and GERD, which were severe impairments. (Tr. at 17, Finding No. 3.) At the third and final inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 4.) The ALJ then found that Claimant did not have an impairment or combination of impairments that functionally equaled the listings. (Tr. at 18, Finding No. 5.) The ALJ found that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of the [C]laimant's symptoms are not entirely credible." (Tr. at 19.) For these reasons, and on the basis of medical expert testimony, the ALJ found Claimant was neither under a disability, nor entitled to benefits. (Tr. at 23, Finding No. 6.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on April 11, 2003, and was an older infant of two years old, on June 6, 2005, the date the application was filed, and was a preschooler, of four years old, at the time of the ALJ's decision. (Tr. at 17, Finding No. 1; 73.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response

Claimant contends that the ALJ erred at the third step of the sequential evaluation when she failed to find either two marked limitations in the domain of interacting and relating with others and moving about and manipulating objects or an extreme limitation in the domain of interacting and relating with others. (Document No. 13 at 3, 8-9.) Claimant asserts that the ALJ's findings in the first three domains (acquiring and using information, attending and completing tasks, and interacting and relating with others) were not supported by a single expert. (Id. at 12-13.) Rather, Claimant asserts that the ALJ relied on her own expertise. (Id. at 13.) She further asserts that the ALJ simply

7

found that Claimant's mother's testimony was not credible in its entirety, and therefore, denied Claimant benefits. (Id. at 14.)

The Commissioner asserts that substantial evidence supports the ALJ's decision that Claimant was not disabled, and thus, not entitled to child's benefits. (Document No. 19 at 8-13.) The Commissioner argues that Claimant is asking improperly that this Court re-weigh the evidence of record and give full credit to Claimant's mother's testimony. (Id. at 9.) The Commissioner asserts that it was reasonable for the ALJ to conclude that Claimant had a marked, but not extreme limitation in the domain of interacting and relating with others, based on the reported instances of behavioral problems. (Id. at 10.) The evidence demonstrated that Claimant exhibited some defiant behavior toward her mother, but her language skills and communication were understandable, she understood what was said to her, she could obey two-part commands and talk about her experiences, and though she threw a tantrum, she was able to be redirected. (Id.) Furthermore, Claimant's attention, concentration, and pace were normal; she had no deficits in language skills; she was able to communicate her basic needs; and she generally was cooperative. (Id. at 10-11.) Moreover, Claimant's mother testified that no doctors rendered a specific diagnosis regarding Claimant's behavior. (Id. at 11.) Claimant also never had to be removed from school due to her behavior. (Id.) Thus, it was reasonable for the ALJ to determine that Claimant's limitation in this domain was marked as opposed to extreme because her impairment did not very seriously interfere with her ability to initiate, sustain, or complete activities independently. (Id. at 10-11.)

Regarding the domain of moving about and manipulating objects, the Commissioner asserts that the medical expert, Dr. Alexander, testified that Claimant exhibited a less than marked limitation in that domain. (Id. at 12.) The Commissioner points out that Claimant noted in her brief

that she did not dispute Dr. Alexander's opinion with regard to Claimant's physical impairments, and therefore, her argument in this regard must fail. (Id.) Contrary to Claimant's allegation, the Commissioner asserts that there is no evidence of a marked limitation in this domain. (Id.) The evidence demonstrated Claimant's ability to walk, run, climb, stoop, squat, kick a ball, jump, ride a push toy, actively explore the office, point using her index finger, imitate circular and vertical strokes, place pieces in a puzzle, turn pages in a book one at a time, imitate gestures and household activities, find hidden objects, open doors, bring items from one room to another on request, and help dress and undress her self and brush her teeth. (Id.) Thus, the Commissioner contends that the evidence supports the ALJ's finding that Claimant had a less than marked limitation in this domain. (Id.) Consequently, because Claimant neither had an extreme limitation in any of the domains or marked limitations in two of the domains, the ALJ correctly decided that her impairments did not functionally equal a listed impairment. (Id. at 13.)

Analysis.

Claimant argues that the ALJ erred in not finding an extreme limitation in the domain of interacting and relating with others, and a marked limitation in the domain of moving about and manipulating objects. (Document No. 13 at 8-9.) In her decision, the ALJ acknowledged Claimant's very aggressive behavior at home and the school reports that her behavior impeded her learning and the learning of others. (Tr. at 21.) The ALJ also acknowledged the September 19, 2006, psychological evaluation conducted by Teresa E. Jarrell, M.A., who noted Claimant's mother's subjective accounts of Claimant's angry outbursts, that Claimant's behavior was unmanageable, and that Claimant did not play well with other children and was aggressive toward them. (Tr. at 21, 502.)

The evidence of record regarding Claimant's mental impairments reveals that on May 6,

9

2005, when Claimant was two years old, she underwent a psychological evaluation by Lawrence J. Richmond, M.A., and William Brezinski, M.A. (Tr. at 246-50.) Claimant's presenting problems were identified as behavioral difficulties and frequent temper tantrums, during which she screamed uncontrollably for hours at a time, banged her head on the furniture, bit and scratched herself, and held her breath until she passed out. (Tr. at 246.) Claimant's mother reported that during the first six weeks of her pregnancy, she frequently engaged in illicit substance abuse, including cocaine, alcohol, sleeping pills, pain pills, marijuana, and tobacco. (Tr. at 247.) Claimant was diagnosed by the examiners with a disruptive behavior disorder eight months prior, but her mother failed to keep subsequent treatment appointments. (Id.)

On mental status exam, Mr. Richmond and Mr. Brezinski noted no disfiguration or physical limitations to movement. (Tr. at 247.) Sensory perception abilities were intact and Claimant actively explored the office. (Id.) However, Claimant did not respond to her mother's attempts to redirect her behavior. (Tr. at 247-48.) Claimant was diagnosed with disruptive behavior disorder NOS and a GAF of 60.[2] (Tr. at 248.) Mr. Richmond and Mr. Brezinski opined that several factors contributed to Claimant's difficulties, including her chaotic home life and the fact that her mother's attempts to discipline Claimant often were undermined by other individuals in the home. (Id.)

A Childhood Disability Evaluation Form, completed by Uma Reddy, M.D., dated June 6, 2005, indicated that Claimant had no limitations in the domains of acquiring and using information and attending and completing tasks; less than marked limitations in the domains of interacting and

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

relating with others and moving about and manipulating objects; and no limitations in the domains of caring for yourself and health and physical well-being. (Tr. at 416-19.)

On June 14, 2005, a psychological evaluation conducted by Tammy M. Roberts, M.A., and L. Andrew Steward, Ph.D., for the purposes of determining eligibility for WV Birth to Three services, revealed that Claimant was able to walk, run, climb, stoop, squat, stand on her tiptoes, kick a ball, jump, ride a push toy, and pedal a bicycle. (Tr. at 256.) Claimant was able to activate cause and effect toys, point using her index finger, imitate circular and vertical strokes, place circle and square pieces in a puzzle, and turn pages in a book one at a time. (Id.) The examiners noted that Claimant's language and communication skills were understandable. (Id.) She used three and four word understandable sentences, pointed to animal pictures, understood what was said to her, showed and named many body parts, obeyed two part commands, talked about her experiences to others, identified rooms in the house, and told them her name. (Id.)

Regarding cognitive skills, the examiners noted that Claimant imitated gestures and household activities, found hidden objects, opened doors, brought items from one room to another on request, and pointed to many pictures. (Id.) When interacting with others, Claimant expressed affection and explored her environment enthusiastically. (Id.) Her mother reported frequent tantrum and that she screamed, cried, bit, pinched, hit, and scratched herself and others when having a tantrum. (Id.) She also reported that she had difficulty with Claimant in stores and restaurants. (Id.) Respecting self-help and adaptive skills, the examiners noted that Claimant chewed her food well, though her mother reported that she was a picky eater. (Id.) Claimant fingered foods well and was learning to use utensils, she helped dress and undress herself, she liked to brush her teeth, she took a bath, and was starting to be potty-trained. (Id.) Claimant's mother reported that Claimant woke up

11

through the night, but fell back to sleep. (Id.) Overall, the examiners opined that Claimant exhibited age-appropriate development in all areas, but exhibited atypical development in the areas of social-emotional skills. (Id.)

On April 17, 2006, Claimant at the age of three years old, underwent another psychological, evaluation, conducted by Kelly Robinson, M.A. (Tr. at 411-15.) Ms. Robinson noted that Claimant listened to her, but frequently ignored her mother's requests. (Tr. at 413.) She further observed that Claimant's speech production was fair with normal rate and volume, that she had poor articulation at times, and that her motor behavior was characterized by frequent movement. (Id.) Ms. Robinson opined that Claimant's attention, concentration, pace, and persistence were within normal limits. (Tr. at 413-15.) Results from the Early Learning Accomplishment Profile ("ELAP") suggested only a mild deficit in gross motor skills, with all other areas considered within normal limits. (Tr. at 413.) Claimant was diagnosed with disruptive behavior disorder, NOS, based on her mother's reported behavior problems of biting, kicking, hitting, cursing, and pinching. (Tr. at 414.)

On April 28, 2006, Mark A. Hughes, M.D., completed a Mental Status Report, on which he indicated that Claimant had sleep disturbance, but no anxiety, compulsions, obsessive thoughts, phobias, preoccupations, delusions, or hallucinations. (Tr. at 430-32.) Dr. Hughes opined that Claimant's attention and concentration were mildly impaired, that her memory functions were grossly intact, that her insight was poor, and that her judgment was good. (Tr. at 432-33.) Claimant exhibited no deficits in language skills, though she did exhibit manipulative and demanding behavior. (Id.)

Ms. Jarrell conducted a psychological evaluation on September 19, 2006. (Tr. at 499-506.) Ms. Jarrell indicated that Claimant was able to communicate her basic needs verbally and was able

to identify all her body parts, but did not speak consistently in full sentences, but used sentences often. (Tr. at 500.) On examination, Claimant generally was cooperative with a euphoric mood and a broad range affect. (Tr. at 502.) Ms. Jarrell encountered no difficulty in gaining her interest in testing materials. (Id.) Testing revealed average intellectual ability, but a low to average range of skill development. (Tr. at 502-03.) Ms. Jarrell noted however, that delays in this skill development was common in children with ADHD. (Id.) Claimant's adaptive behavioral functioning was in the borderline to extremely low range. (Tr. at 505.) Ms. Jarrell diagnosed ADHD, combined type; disruptive behavior disorder NOS; and assessed a GAF of 60. (Tr. at 504-05.)

On October 27, 2006, Carmen Bell, M.A., C.C.C., SLP, conducted a speech and language evaluation, and opined that Claimant exhibited age appropriate speech and language skills. (Tr. at 423-24.) An Individualized Education Program ("IEP") Report, dated May 31, 2007, indicated that Claimant's behavior could impede her learning. (Tr. at 520-27.) Nevertheless, the Report further indicated that Claimant was proficient in English and did not require communication needs or extended school year services. (Tr. at 524.) The Report also indicated that Claimant could spend 100% of her time in a general education environment, and no time in special education. (Tr. at 526.)

In addition to the objective medical evidence, Claimant's mother testified generally at the administrative hearing as to Claimant's aggressive behavior. Additionally, the medical expert, Dr. Alexander, testified that Claimant exhibited no limitation in the domain of caring for yourself, and less than marked limitations in the domains of moving about and manipulating objects and health and physical well-being. (Tr. at 566.)

Based on the foregoing evidence, the undersigned finds that the ALJ's finding of a marked limitation in the domain of interacting and relating with others is supported by substantial evidence

of record. As the Commissioner notes, it was reasonable for the ALJ to determine that Claimant's impairments did not very seriously interfere with her ability to initiate, sustain, or complete activities independently. As the evidence demonstrates, Claimant's communication and language skills were understandable and intact and she was affectionate and explored her environment enthusiastically. Though Claimant threw tantrums with her mother, she consistently responded appropriately to the directions of her various examiners, who found her concentration, attention, persistence, and pace to be within normal limits. Claimant was able to communicate her basic needs, she was playful and social, and generally was cooperative. Furthermore, she was proficient in English and neither required communication needs or extended school year services. Thus, the ALJ's decision that Claimant was only markedly limited in her ability to interact and relate with others is supported by substantial evidence.

The Court further finds the ALJ's decision that Claimant had less than marked limitation in moving about and manipulating objects is supported by substantial evidence. As the Commissioner points out, Claimant asserts in her brief that she "does not dispute the testimony and opinion of Dr. Hadden Alexander at the administrative hearing." (Document No. 13 at 4.) Nevertheless, the evidence reveals, as the ALJ found, that Claimant did not have a marked limitation in this domain because her impairments did not seriously interfere with her ability to initiate, sustain, or complete activities independently. As discussed above, the evidence revealed that Claimant was quite active and was able to walk, run, climb, stoop, squat, stand on her tiptoes, kick a ball, jump, ride a push toy, and pedal a bicycle. (Tr. at 256.) She also was able to activate cause and effect toys, point using her index finger, imitate circular and vertical strokes, place circle and square pieces in a puzzle, and turn pages in a book one at a time. (Id.) Furthermore, she was able to imitate gestures and household

14

activities, find hidden objects, open doors, bring items from one room to another on request, and point to many pictures. (Id.) Claimant was learning to use utensils, she helped dress and undress herself, she liked to brush her teeth, she took a bath, and was starting to be potty-trained. (Id.) Thus, the substantial evidence supports the ALJ's decision that Claimant had a less than marked limitation in the domain of moving about and manipulating objects.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 19.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge